IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 14, 2002

## STATE OF TENNESSEE v. DARRELL W. SMITH

**Direct Appeal from the Circuit Court for Franklin County**
**No. 13594     J. Curtis Smith, Judge**

_____

**No. M2002-00735-CCA-R3-CD - Filed March 19, 2003**

_____

The appellant, Darrell W. Smith, pled guilty in the Franklin County Circuit Court to evading arrest
and operating a motor vehicle in violation of the Motor Vehicle Habitual Offenders Act, both Class
E felonies.  The parties agreed that the appellant would be sentenced on each conviction to one year
and one day with the sentences to be served consecutively.  The manner of service of the sentences
was to be determined by the trial court.  Following a sentencing hearing, the trial court ordered the
appellant to serve 120 days in the county jail, with the balance of the sentences to be served in the
community corrections program.  On appeal, the appellant challenges the period of confinement.
After reviewing the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G.
RILEY, JJ., joined.

Jerre M. Hood, Winchester, Tennessee, for the appellant, Darrell W. Smith.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General;
J. Michael Taylor, District Attorney General; and Steven Blount, Assistant District Attorney General,
for the appellee, State of Tennessee.

### OPINION
### I.  Factual Background

        According to the presentence report, the appellant was declared to be a motor vehicle
habitual offender on July 11, 2000.  On August 26, 2000, Patrolman Dwayne Marion of the Cowan
City Police Department responded to a call concerning a reckless driver on Water Tank Road.
Patrolman Marion attempted to stop the vehicle, but the driver, later identified as the appellant,
refused to stop.  Eventually, the appellant abandoned his vehicle and fled on foot.  After a short
chase, Patrolman Marion apprehended the appellant.  In his affidavit of complaint, Patrolman Marion
noted that the appellant

had a strong odor of alcoholic beverage on or about his person. [The appellant] stated that he had been drinking and that he did not have a valid driver's license. He stated that he did not stop because his license was revoked. . . . [The appellant] refused to submit to an intoximeter test.

The Franklin County Grand Jury indicted the appellant, charging him with fourth offense driving under the influence, violating the implied consent law, felony evading arrest, evading arrest, reckless driving, violating the Motor Vehicle Habitual Offenders Act, and resisting arrest. On May 11, 2001, the appellant pled guilty to felony evading arrest and operating a motor vehicle in violation of the Motor Vehicle Habitual Offenders Act. Tenn. Code Ann. §§ 39-16-603(b) (1997), 55-10-616 (1998). The parties agreed that the appellant would be sentenced on each conviction to one year and one day, with the sentences to be served consecutively for an effective sentence of two years and two days. Pursuant to the plea agreement, the trial court determined the manner in which the sentences would be served. Following a sentencing hearing, the trial court ordered the appellant to serve 120 days in the county jail, with the balance of the sentences to be served in the community corrections program. On appeal, the appellant challenges the requirement that he serve 120 days confinement in the county jail.

## II. Analysis

When an appellant challenges the length, range, or manner of service of a sentence, this court conducts a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). However, this presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, this court must consider (1) the evidence, if any, received at trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to the sentencing alternatives; (4) the nature and characteristics of the offenses; (5) any mitigating or enhancement factors; (6) any statements made by the appellant on his own behalf; and (7) the appellant's potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102 and -103 (1997), -210 (Supp. 2002). See also Ashby, 823 S.W.2d at 168. The burden of showing that a sentence was improper is on the appellant. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Tennessee Code Annotated section 40-35-102(5) provides that only "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration." A defendant who does not fall within this class of offenders and who is "an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options." Tenn. Code Ann. § 40-35-102(6). Furthermore, "[t]he trial court must presume that a defendant sentenced to eight years or less and not an offender for whom incarceration is a priority is subject to alternative sentencing and that a sentence other than incarceration would result in successful rehabilitation."

State v. Byrd, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993) (citation omitted); see also Tenn. Code Ann. § 40-35-303(a) (Supp. 2002). However, the presumption of alternative sentencing may be rebutted by "evidence to the contrary." Tenn. Code Ann. § 40-35-102(6); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000). Guidance as to what constitutes "evidence to the contrary" is found in Tennessee Code Annotated section 40-35-103(1), which provides for confinement when:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) [m]easures less restrictive that confinement have frequently or recently been applied unsuccessfully to the defendant.

In determining the manner in which the appellant would serve his sentence, the trial court considered the presentence report, the testimony of defense witnesses, and the arguments of counsel. The presentence report revealed a lengthy criminal history. In addition to being declared a motor vehicle habitual offender, the appellant had three prior convictions for driving under the influence, two prior convictions for possession of marijuana, two prior convictions for public intoxication, one prior conviction for domestic violence, one prior conviction for contributing to the delinquency of a minor, one prior conviction for passing worthless checks, and several traffic violations. Many of these offenses were committed while the appellant was on probation.

The trial court also considered the testimony of the appellant's wife, aunt, and minister. The cumulative testimony of these witnesses, as well as the appellant's own statement in the presentence report, revealed that after discovering his first wife in a compromising position with her own father, the appellant started abusing drugs and alcohol. Allegedly, this substance abuse led to numerous alcohol-related convictions. However, the witnesses testified that since his arrest for the instant offenses, the appellant had stopped drinking and abusing drugs and had "turned his life over to the Lord." All three witnesses agreed that the appellant "had changed" and deserved to be sentenced to a community corrections sentence without any confinement.

Laura Prosser, the probation and parole officer who prepared the appellant's presentence report, also testified on the appellant's behalf. Prosser confirmed that the appellant had not been arrested since committing the instant offenses, but stated that the appellant had a poor history of paying child support and previous fines and court costs.

> In sentencing the appellant to a period of confinement, the trial court stated,
> I'm required to look at his entire history not just the last eight months or so. . . . I don't accept his explanation for a minute that all the terrible things that he's done in this 21 arrests and 13 convictions simply has to do with one, I'm sure traumatic event. Everyone, every adult, sometimes children have traumatic events through their lives, that's not an excuse in the least. . . . If I look at his record it's

abysmal. . . . I don't think it would be appropriate that this young man simply walk away on Community Corrections given this kind of record, and I've taken consideration of what these ladies have said, but he had to be responsible for what's happened in the past and I can't totally dismiss that because he appears to have turned over a new leaf. . . . He'll serve 120 days, [then] he'll be released on Community Corrections.

On appeal, the appellant challenges the requirement that he serve 120 days confinement in the county jail. Specifically, the appellant contends that the trial court failed to consider the appellant's voluntary rehabilitation. The appellant asserts that

[t]he purpose for the new Sentencing Reform Act of 1989 was to rehabilitate where possible and for the courts to use alternatives to incarceration unless it was necessary to prevent a [depreciation] of the seriousness of an offense or act as a deterrent to others together with the fact that the defendant showed no potential for rehabilitation. [The appellant] contends that the [S]tate has not established any of these to the extent that it would require complete incarceration without community correction and to the contrary the [appellant] had presented ample proof of rehabilitation.

We note that the trial court did not sentence the appellant to "complete incarceration without community correction." The trial court sentenced the appellant to split confinement, requiring the appellant to serve 120 days in the county jail and the remainder of the sentences on community corrections. We now consider the propriety of the period of confinement.

We agree with the appellant that one of the goals of the 1989 Sentencing Reform Act was to "[e]ncourag[e] effective rehabilitation of . . . defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants." Tenn. Code Ann. § 40-35-102(3)(C). We also agree that, when necessary, trial courts may impose sentences involving confinement to avoid depreciating the seriousness of the offense or to provide an effective deterrent to others likely to commit a similar offense. Tenn. Code Ann. § 40-35-103(1)(B). However, in stating his argument, the appellant failed to include two additional situations in which confinement may be necessary, i.e., to protect society by restraining a defendant who has a long history of criminal conduct and when measures less restrictive than confinement have been applied unsuccessfully to the defendant. Tenn. Code Ann. § 40-35-103(1)(A) and (C).

In the instant case, the trial court found confinement to be necessary to protect society by restraining a defendant who has a long history of criminal conduct. Tenn. Code Ann. § 40-35-103(1)(A). The trial court described the appellant's criminal record as "abysmal," counting twenty-one arrests and thirteen convictions. The trial court stated, "I don't think it would be appropriate that this young man simply walk away on Community Corrections given this kind of record."

Considering both the appellant's prior criminal history and his attempt at rehabilitation, the trial court determined that the appropriate sentence would be 120 days confinement, with the remainder of the sentence to be served on community corrections.

We also find confinement to be necessary because "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the [appellant]." Tenn. Code Ann. § 40-35-103(1)(C). As previously noted, the appellant committed numerous offenses while on probation for other crimes. Although we commend the appellant for his efforts to become a "new person," we conclude that because of his lengthy criminal record and because measures less restrictive than confinement failed in the past, the trial court properly ordered the appellant to serve a portion of his sentences in confinement. See State v. James M. Smith, No. M1999-00252-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 328 (Nashville, Apr. 20, 2000).

The appellant also argues that the trial court erred in sentencing the appellant for driving under the influence when the appellant did not plead guilty to that offense. However, the appellant misconstrues the trial court's language. In response to the appellant's request to serve the 120 days on "split confinement," the trial court stated,

> No, sir, . . . this man is [pleading guilty] to a felony that I could send him to the Department of Correction, at least he ought to serve the minimum 120 days, which he would get for multiple offense DUI, I think at a minimum. So I've taken into consideration what these fine people say [because] my inclination was to probably give him more than that, but I think 120 days is appropriate if he'd had a 3rd or 4th offense DUI the State law requires that he serve at least 120 days, so he'll serve 120 days here.

The trial court did not impose a sentence for driving under the influence. Rather, this language indicates that the trial court considered the number of previous convictions for driving under the influence in determining the appropriate period of confinement. This argument is without merit.

### III. Conclusion

Based upon the foregoing, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-5-